UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PLUMBING AND MECHANICAL
CONTRACTORS ASSOCIATION OF
MILWAUKEE AND SOUTHEASTERN
WISCONSIN, INC.,

                Plaintiff,

v.

STEAMFITTERS AND REFRIGERATION
SERVICE FITTERS LOCAL 601, UNITED
ASSOCIATION OF JOURNEYMEN AND
APPRENTICES OF THE PLUMBING AND
PIPEFITTING INDUSTRY OF THE
UNITED STATES AND CANADA,

                Defendant.

Case No. 12-CV-630-JPS

ORDER

On June 19, 2012, plaintiff, Plumbing and Mechanical Contractors Association of Milwaukee and Southeastern Wisconsin, Inc. ("the Association"), filed a complaint against defendant, Steamfitters and Refrigeration Service Fitters Local 601, United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada ("Steamfitters"). Complaint (Docket #1) at 1. Briefly stated, the Association and Steamfitters were parties to a Collective Bargaining Agreement ("CBA"); this lawsuit arises out of Steamfitters' notice of termination of that CBA. In its complaint, the Association seeks: (1) a declaratory judgment that the CBA was not adequately or timely terminated; (2) a declaratory judgment that the question of whether the CBA was terminated is for judicial determination and does not fall under the CBA's arbitration clause; and (3) a permanent injunction to prevent the Steamfitters

from initiating proceedings based upon a claim that the CBA is not in effect for the 2012-2013 time period. Complaint at 6-8.

Presently before the court is Steamfitters' Motion to Dismiss (Docket #5). In its motion, Steamfitters argues that the parties' dispute must be resolved by arbitration, pursuant to the CBA's arbitration clause. Motion Brief (Docket #6) at 3, 9. In response, the Association argues that the arbitration clause in the CBA does not cover the termination of the CBA. Response (Docket #10) at 2, 3. As explained below, the court concludes that the dispute regarding Steamfitters' notice to terminate the CBA is to be resolved via arbitration. The court, therefore, grants Steamfitters' motion to dismiss.

1. Legal Standard

Steamfitters brings this motion to dismiss under Federal Civil Rule of Procedure 12(b)(6). A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint by asserting that the claimant failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), claimant's complaint must allege facts sufficient to "state a claim for relief that is plausible on its face." *Justice v. Town of Cicero*, 557 F.3d 768, 771 (7th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). The court construes the complaint in the light most favorable to the claimant, accepts as true all well-pleaded facts alleged, and draws all possible inferences in the claimant's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Yet, the court need not accept as true "legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009). Indeed, "[a] ruling concerning the legal sufficiency of the complaint is an appropriate determination to make in response to a motion to dismiss." *Sanner v. Board of Trade of City of Chicago*, 62 F.3d 918, 924 (7th Cir. 1995)

(citing *Gomez v. Illinois State Board of Education*, 811 F.2d 1030, 1039 (7th Cir. 1987)).

2.  Facts

In its complaint, the Association relays the following pertinent facts, which the court accepts as true for purposes of this motion. *Tamayo*, 526 F.3d at 1081. The two parties agreed to a CBA, for a term of one year, from June 1, 2011, to May 31, 2012. Complaint at 3. Section 30.1 of the CBA contains a "duration clause" which states:

> This Agreement shall be binding upon the parties, their successors and assigns, and shall become effective as June 1, 2011 and continue in full force and effect until May 31, 2012, and from year to year thereafter, unless terminated by written notice given by either party to the other not less than sixty (60) days prior to said expiration date, or any anniversary thereof. Such notice shall contain a written statement of the changes desired by the party giving such notice.

Complaint Exhibit 1 at 24, Section 30.1. The CBA also includes an "arbitration clause," which states:

> In the event a grievance, controversy, or dispute arising under this Agreement cannot be resolved by [Steamfitters] and the Association within five (5) working days, it shall automatically be referred to the Joint Grievance Board for the purpose of settlement and adjustment.
>
> . . .
>
> In the event a matter cannot be satisfactorily settled or adjusted by the Joint Grievance Board, an impartial arbitrator shall be selected by the Board and the matter shall expeditiously be submitted to the arbitrator for decision. The decision of the impartial arbitrator shall be binding upon both parties.

Complaint Exhibit 1 at 17, Sections 18.2 and 18.5(a).

The Steamfitters mailed a letter dated March 29, 2012, to the Association, purporting to give notice of termination; that letter did not include a written statement of the contract changes desired by the Steamfitters. Complaint at 4. The Association received this letter on April 2, 2012. Complaint at 4.

3. Analysis

In its motion, Steamfitters argues that the court must dismiss the Association's case because the arbitration clause in the CBA requires the parties to submit "dispute[s] arising under [the] Agreement" to arbitration. Motion Brief at 3. Steamfitters contends that the question of whether its notice was timely and effective falls under the arbitration clause of the CBA because it is a dispute "arising under" the CBA, or, more specifically, the termination provision of the CBA. Motion Brief at 5. In response, the Association argues that the question of whether a CBA has been terminated is for judicial, rather than arbitral determination. Response at 3. The Association responds that in the Seventh Circuit, "a district court, not an arbitrator, has to determine the question whether or not a labor contract was properly terminated." Response at 1. The Association relies primarily on *Stevens Construction Corp. v. Chicago Regional Council of Carpenters*, 464 F.3d 682 (7th Cir. 2006). Response at 1.

The court concludes that the Association's reading of *Stevens* is much too broad, and that *Stevens* is materially distinguishable from the case at hand. The facts in *Stevens* are as follows. Stevens Construction was a member of the Associated General Contractors of Greater Milwaukee, Inc. ("AGC"), an employers' association that entered into a CBA with the Chicago Regional Council of Carpenters ("the Carpenters"). 464 F.3d at 683. AGC had two separate CBA with the Carpenters: one was in effect for the years 1999 to

2004 ("1999 CBA"), and one for the years 2004 to 2008 ("2004 CBA"). *Id.* The 1999 CBA had a rollover provision, stating that a party who fails to meet for purposes of collective bargaining is deemed to have conceded to some of the changes desired by the party present for bargaining. *Id.* In 2003, prior to the expiration of the 1999 CBA, Stevens withdrew from the AGC. *Id.* The Carpenters requested that Stevens assent to being covered by the 2004 CBA, but Stevens refused. *Id.* The Carpenters later filed a grievance against Stevens, alleging that Stevens was violating the 2004 CBA; Stevens filed suit in federal court, seeking a declaratory judgment that it was not covered by the 2004 CBA and seeking an injunction prohibiting the Carpenters from pursuing its grievance. *Id.* at 683-84. The Carpenters filed two counterclaims, seeking to compel arbitration of whether Stevens' termination was proper, or a judgment that Stevens was bound by the 2004 CBA because it failed to properly terminate the 1999 CBA. *Id.* at 684. The district court granted judgment for Stevens, concluding that Stevens had properly terminated the 1999 CBA and was not bound by the 2004 CBA. *Id.* The Seventh Circuit affirmed explaining:

> One difficulty with the Carpenters' argument is that the "underlying claim" in the union's grievance against Stevens was not that the company failed to terminate the 1999 CBA, but that the company was not complying with the substance of the 2004 agreement. … Although the Carpenters' counterclaims sought to compel Stevens to arbitrate the termination issue under the 1999 CBA, there is no mention in the record of any grievance based on the 1999 CBA that Stevens could have been ordered to arbitrate. For the same reason, the Carpenters' attempt to recharacterize their claim as a "post-expiration grievance"-that is, a "dispute [that], although governed by the contract, arises after its termination," *Nolde Bros., Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 244, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977)-is unavailing.

> A post-expiration grievance must be a grievance based on an agreement that has expired; the Carpenters filed no such grievance here.

*Id.* at 686. The Seventh Circuit's analysis thus turned on the fact that the Carpenters' grievance found footing in the 2004 CBA, to which, of course, Stevens was not a party. The circuit court distinguished this fact pattern from the usual "post-expiration grievance" because the dispute was not based upon an agreement that had expired.

The Association's urging notwithstanding, this court does not read *Stevens* as "holding that a district court, not an arbitrator, has to determine the question of whether or not a labor contract was properly terminated." Response at 1. In the case currently before the court, the facts critical to the analysis in *Stevens* are absent. First, there is no dispute that the parties had a valid CBA from June 1, 2011, to May 31, 2012. Second, there is no dispute that the allegedly noncompliant actions provoking the complaint occurred during the time period when the CBA was in place to govern the parties' relationship. Third, as the parties' briefing on the matter shows, resolution of the complaint requires interpretation of the termination clause of the CBA to determine whether the notice was timely (even though the Association actually received it after May 31, 2011) and whether the notice was adequate (even though Steamfitters did not include a written statement of contract

changes desired). Fourth and finally, the CBA includes a broad[1] arbitration

---

[1]The Association also argues that the arbitration clause in this case is "narrow" and that termination is a matter of "substantive arbitrability for judicial determinations." Response at 3. For support, the Association offers a string cite of six cases. Response at 3-4. The court concludes that the cited authorities are not persuasive, and, in some instances, are directly contrary to the Association's argument.

In *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO*, the only Seventh Circuit case cited, the factual background is so unique as to render the case *sui generis*, and, in any event, the Seventh Circuit did not hold that a court must determine the termination question, but rather remanded for more analysis regarding whether the question is arbitrable. 335 F.3d 643, 649-50 (7th Cir. 2003).

Then, in *New England Cleaning Services, Inc. v. Services Employees International Union, Local 254, AFL-CIO*; *New York News, Inc. v. Newspaper Guild of New York*; and *Trinidad Corp. v. National Maritime Union of America, Dist. No. 4, Marine Engineers Beneficial Ass'n*, the First, Second, and Eighth Circuits, respectively, held that the arbitration clauses at issue did not apply to the question of termination because the arbitration clauses covered only employee grievances, not grievances brought by the entire union. *New England Cleaning Services, Inc. v. Services Employees International Union, Local 254, AFL-CIO*, 199 F.3d 537, 541-42 (1st Cir. 1999); *New York News, Inc. v. Newspaper Guild of New York*, 927 F.2d 82, 83-84 (2nd Cir. 1991); *Trinidad Corp. v. National Maritime Union of America, Dist. No. 4, Marine Engineers Beneficial Ass'n*, 81 F.3d 769, 772 (8th Cir. 1996). The CBA at issue in today's case contains no such restriction and is, in fact, found in Article 18 of the CBA, entitled "Contract Administration Procedures," which contains procedures not limited to employee grievances. Complaint Exhibit 1 at 17.

Finally, the Ninth Circuit, in *Northern California Newspaper Guild Local 52 v. Sacramento Union*, reiterated the usual rule that "[w]hen the collective bargaining agreement contains a broad arbitration clause, the question of whether a particular act or failure to act effectively serves to terminate the agreement is to be resolved by an arbitrator," but found the arbitration clause in that CBA to be limited to disputes arising from the "application of" the CBA, a qualification the facts of that case did not satisfy. 856 F.2d 1381, 1383 (9th Cir. 1988) (square brackets in original, citation omitted). Further, in *Brotherhood of Teamsters and Auto Truck Drivers Local No. 70 v. Interstate Distributor Co.*, the Ninth Circuit concluded that the arbitration clause "clearly includes disagreements over whether the collective bargaining agreement has been renewed or has been terminated," and therefore directed the District Court to compel arbitration. 832 F.2d 507, 512 (9th Cir. 1987).

On these authorities, the court simply cannot agree with the Association's position.

clause that states agreement to arbitrate any "grievance, controversy, or dispute arising under this Agreement." The Seventh Circuit has instructed that "a court should compel arbitration unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002) (citations, internal quotation marks omitted). This arbitration clause may certainly be interpreted as governing the parties' dispute as to termination. The parties must, therefore, resolve this dispute in arbitration.

Accordingly,

IT IS ORDERED that Steamfitters' motion to dismiss (Docket #5) be and the same is hereby GRANTED; this case be and the same is hereby DISMISSED.

The Clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of December, 2012.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge